## II. KRANTZ MFG. CO. v. ALTMAN et al.

(Circuit Court of Appeals, Second Circuit. April 10, 1911.)

### No. 220.

PATENTS (§ 328*)—NOVELTY—ELECTRICAL PANEL-BOARD.
 The Krantz patent, No. 705,850, for an electrical panel-board, is void for lack of patentable novelty.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the H. Krantz Manufacturing Company against Benjamin Altman and Michael Friedsam. Decree for defendants, and complainant appeals. Affirmed.

This cause comes here upon appeal from a decree dismissing a bill of complaint, in the usual form, alleging infringement of claims 1 and 3 of United States patent No. 705,850 for electrical panel-board, issued July 29, 1902, to Hubert Krantz.

F. Warren Wright, for appellant.
Eidlitz & Hulse (C. P. Goepel, of counsel), for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LACOMBE, Circuit Judge. The claims alleged to be infringed read as follows:

"1. An electrical panel-board, having a back-plate with conducting bars and switches mounted on said back-plate and a protecting cover inclosing the said conducting bars and the current-carrying parts of the switches and their connections, said cover having openings for the manipulation of the switches."

"3. An electrical panel-board, having a back-plate, bus-bars, and cross-bars with branch circuit connections, and switches therein, all mounted on said back-plate, and a protecting cover inclosing all the current-carrying parts of the panel-board, but with openings for the manipulation of the switches."

The purpose of a panel-board is to provide a common point in a lighting system, means for controlling the different branch circuits of the installation. This means for control involves the assembling at the panel-board of bus-bars, cross-bars, switches, and other parts which carry current without the insulating covering which surrounds the ordinary wire of a circuit. Unless otherwise protected, accidents result. A person, wishing to manipulate a switch to control a current, is liable to come in contact with some of the exposed parts carrying current, with disastrous results. The usual form of panel-board is substantially a box, without a cover, standing up on end. The bottom of the box is the back-plate of insulating material, and the sides of the box surround the apparatus, which is thus stowed away as it were in a sort of closet. It may have an ordinary hinged door which will cover all the parts when not in use and expose them all while it is thrown open. Other claims, not in controversy here, give further details as to the current-carrying parts. It is necessary in this case to determine only what it is that claims 1 and 3 cover, and that may, as it seems to us, be readily done from a study of the specifications. These begin with the statement that:

"One great difficulty in the use of electrical panel-boards and switchboards, especially those put up in houses and other such structures, is that unskilled or careless attendants are liable to be harmed by coming in contact with live parts of the circuit in manipulating the switches or in renewing blown-out fuses. The main object of my invention is to so construct a panel-board or switchboard that these troubles cannot occur."

The drawings show the alleged invention as applied to a panel-board on the three-wire system, but it is stated that it may be employed on other constructions.

Figure 1 is the only one necessary to consult for an understanding of the device.

FIG. 1.

The patentee says:

"A is the insulating back-plate and B represents the sides of the panel-board, which, when employed in a building or like structure, may have its front closed by a hinged or sliding door in any usual or convenient manner, although I prefer to construct the door with a fixed center part, C, over the bus-bars and cross-bars, and hinged side doors, C¹ and C², over the fuses and switches for the branch circuits."

D, D¹, and D² are bus-bars, and E, E¹, cross-bars. F is a slow break switch; but it is stated that any other kind of switch, including pushbutton, may be used. The details of switch mechanism (contacts, $m$, $n$, plates, N, movable lever, $f^2$, fuses, R, etc.), need not be particularly described.

"The actuating-handle, $f$, for the switch, F, passes up through an opening, $k$, in the cover-plate or protecting plate, K, which I prefer to make of insulating material."

Referring to fuses, switches, and cross-bars, E, E¹, the patentee says:

"The relative position of these parts may be changed, provided the switches and fuse-clips are mounted upon the same back-plate, A, with the bus-bars and cross-bars, all on the same panel, and provided the current-carrying parts of the fuses, as well as the switches, are inclosed and protected by a cover or covers, such as K. It will be seen that the insulating cover-plate, K, extends over the fuses, R; holes being formed for the ready insertion and withdrawal of the fuse cartridges."

The specification includes with the statement:

"By the constructions described I provide a panel-board which has its switches and fuse connections all mounted on the same back-plate with the bus and cross-bars, thus constituting a self-contained structure in which the current-carrying parts of the switches and fuse connections are protected from harming the person who has to use them."

The specifications are the same now as they were when the application was filed, but the claims in controversy (1 and 3) originally read as follows:

"1. An electrical panel-board, having a back-plate with conducting bars and switches mounted on the said back-plate and a protecting cover inclosing the current-carrying parts of the switches and their connections, said cover having openings for the manipulation of the switches."

"3. An electrical panel-board, having a back-plate, bus-bars, and cross-bars with branch circuit connections and switches therein, all mounted on said back-plate and a protecting cover inclosing the current-carrying parts of the switches and their connections, said cover having openings for the manipulation of the switches."

These claims, it will be seen, did not describe a structure capable of accomplishing what the patentee declared was the object of his invention, because it did not protect unskilled or careless attendants from coming in contact with live parts of the circuit. The claims made no provision for covering bus-bars or cross-bars, which carry live current. The only protecting cover they contemplated was one inclosing the switches and their connections. The examiner, citing four patents against these claims, held that:

"As it is old to provide switching apparatus with covers through which the handles work, it would apparently not involve invention to apply this principle to a panel-board with its switches and fuses."

The cover with holes for the handles is evidently the cover-plate, K, of the drawing. The applicant did not controvert the position of the examiner that the device without protection for the bus-bars and cross-bars was not by itself patentable, but amended the claims so that they call for a protecting cover which will inclose *all* the current-carrying parts, bus-bars, cross-bars, switches, and connections, but will have openings in such cover for the manipulation of the switches. Such a cover is shown in the drawing as C, C¹, and C², where C is fixed, while C¹ and C² swing open to give access to the handles which manipulate the switches.

The record, however, shows earlier structures in which a door or cover inclosing all the parts had a segment of such door cut out and hinged, so that a portion of the interior could be uncovered by opening a part-of the door, while the other portions of the interior remained protected by the rest of the door. Such an arrangement appears in exhibits marked "Park Row" and "Schermerhorn," and in one from which the label has disappeared. Indeed, given the result to be accomplished, such an arrangement of the protecting cover seems obvious. The specifications do not point out, and these two claims do not refer to, any arrangement of the electrical parts of the panel-board as novel and essential to these claims. These claims manifestly refer to the device shown to· accomplish the object sought to be accomplished, viz., the protection of unskilled or careless attendants, and we are unable to find in such device any patentable novelty.

The decree is affirmed, with costs.